UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JASON ROMERO,<br><br>                Plaintiff(s),<br>    v.<br><br>STATE OF WASHINGTON et al,<br><br>                Defendant(s). | CASE NO. 2:20-cv-01027-TL-MLP<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

This matter comes before the Court on the Report and Recommendation of the Honorable Michelle L. Peterson, United States Magistrate Judge. Dkt. No. 66. Having reviewed the Report and Recommendation, Defendants' Objection to Report and Recommendation (Dkt. No. 67), Plaintiff Jason Romero's Objection to Report and Recommendation (Dkt. No. 68), Defendants' Response to Plaintiff's Objection to Report and Recommendation (Dkt. No. 69), and the remaining record, the Court ADOPTS the Report and Recommendation, OVERRULES Plaintiff's objection, and ADOPTS Defendants' objection, as explained below.

## I. BACKGROUND

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 related to the alleged delay and denial of medical treatment. Dkt. No. 1-2. The Report and Recommendation provides a thorough accounting of the facts in this case, Dkt. No. 66 at 3–10. Therefore, the Court will assume familiarity with the facts and will not repeat them here.

Plaintiff Jason Romero objects to two findings in the Report and Recommendation: (1) the dismissal of his Eighth Amendment claims against the individually named Defendants; and (2) the dismissal of his general negligence and medical malpractice claims against the individually named Defendants. Plaintiff does not object to the recommendation that the Court dismiss his intentional infliction of emotional distress claim (Fourth Cause of Action, *see* Dkt. No. 1-2 at 11–12) or deny summary judgment on any statutory medical negligence claim against Defendants the State of Washington and the Washington State Department of Corrections (the "DOC") (together, the "State Defendants").

Defendants' objection only notes a scrivener's error in the Report and Recommendation, *i.e.*, that it references a claim for negligent infliction of emotional distress where the claim is actually for intentional infliction of emotional distress. Defendants do not object to the recommendation that the Court grant Plaintiff's motion for partial summary judgment with respect to the issue of liability as to his general negligence claim against the State Defendants. Nor do Defendants object to the recommendation that the Court deny Defendants' motion for summary judgment on the issue of contributory negligence. The Court agrees with the analysis and findings in the Report and Recommendation on these two issues.

## II. LEGAL STANDARD

A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C.

§ 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to"). "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1). A party properly objects when the party files "specific written objections" to the report and recommendation as required under Federal Rule of Civil Procedure 72(b)(2).

### III. DISCUSSION

The Court adopts the reasoning and conclusions set forth in the Report and Recommendation, except as modified to the extent discussed below in response to the Parties' objections.

#### A. Eighth Amendment Claim of Deliberate Indifference

Plaintiff objects to the recommendation to grant Defendants' Motion for Summary Judgment on his Eighth Amendment claims against all individual Defendants. As an initial matter, Plaintiff "requests this Court review the history of systemwide neglect" in his objection. Dkt. No. 68 at 3. But to hold an individual defendant liable for deliberate indifference under the Eighth Amendment, the Court must look to that individual's conduct and the facts of the individual case. As the Ninth Circuit—in a case cited by Plaintiff—instructs, in determining deliberate indifference to medical needs, a court must "scrutinize the particular facts and look for substantial indifference *in the individual case*, indicating more than mere negligence or isolated occurrences of neglect." *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (emphasis added).

Eighth Amendment liability "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). As laid out in the Report and Recommendation, the standard

to establish an Eighth Amendment violation for inadequate medical care is a "high legal standard" that requires a showing of deliberate indifference. Dkt. No. 66 at 15; *see also Balla v. Idaho*, 29 F.4th 1019, 1025 (9th Cir. 2022) (a plaintiff must satisfy a subjective deliberate indifference standard). The "high legal standard" to establish deliberate indifference is "beyond malpractice or gross negligence." *Balla*, 29 F.4th at 1025–26.

### 1. Defendant Mary Gumbo

It does not appear that Plaintiff objects to the recommendation regarding Defendant Mary Gumbo, as his objection does not provide any specific argument relating to Ms. Gumbo on this issue. Having reviewed the Report and Recommendation, the Court agrees with and adopts the holding that Plaintiff's Eighth Amendment claim against Ms. Gumbo should be dismissed.

### 2. Defendant Adelaide Horne

With regard to Defendant Adelaide Horne, Plaintiff only asserts that she "had a duty to provide Romero with adequate medical care." Dkt. No. 68 at 5. But not providing "adequate medical care" is a far cry from demonstrating actions "beyond malpractice of gross negligence." *Balla*, 29 F.4th at 1026. For the reasons set forth in the Report and Recommendation (Dkt. No. 66 at 19–21), the Court agrees that Plaintiff fails to meet the high standard for deliberate indifference, and Ms. Horne is entitled to summary judgment as a matter of law.

### 3. Facility Medical Director Defendants

The Court will first address an objection raised by Plaintiff that is common to Defendants Areig Awad and Julia Barnett: that because Drs. Awad and Barnett each held the position of Medical Director for some portion of the relevant time period, they "each had the responsibility to implement policies and procedures to prevent inmate with serious health conditions from being lost to follow-up." Dkt. No. 68 at 4. This ground to challenge the Report and

Recommendation is not properly before the Court because this argument was not raised in the underlying motions papers in relation to the Eight Amendment claim.[1]

### a. Defendant Areig Awad

Plaintiff's objection disputes the Report and Recommendation's conclusion that he did not file any medical kites regarding his eye surgery follow-up appointment after Dr. Awad became the Facility Medical Director, referencing a January 14, 2019, kite Plaintiff filed. *Id.* at 5. Specifically, Plaintiff objects that "[t]here is a genuine issue of material fact as to whether Dr. Awad was aware of Romero's serious medical need after he submitted this kite to MCC medical staff." *Id.* Plaintiff's focus on this one fact ignores all the other facts regarding Dr. Awad's actions (that Plaintiff does not dispute), such as her taking steps to expedite Plaintiff's appointment with an optometrist by March 2019, that form the basis of the Report and Recommendation's conclusion that Plaintiff failed to demonstrate that Dr. Awad's actions were unreasonable under the circumstances. *See* Dkt. No. 66 at 16–18. Even if a factfinder were to find Dr. Awad was aware of Plaintiff's medical needs based upon the January 14, 2019, kite, Plaintiff has not pointed to any evidence that might demonstrate that Dr. Awad's conduct rose to the level of deliberate indifference. Therefore, Dr. Awad is entitled to summary judgment on Plaintiff's Eight Amendment claim.

### b. Defendant Julia Barnett

Plaintiff asserts that Defendant Julia Barnett was deliberately indifferent based upon her supervisory role in implementing policies and procedures at the DOC. Dkt. No. 68 at 4–5.

---

[1] Plaintiff did raise the DOC's medical policies and procedures in addressing the corporate medical negligence of the State Defendants (Dkt. No. 44 at 19–23), and Judge Peterson recommends the Court grant Plaintiff's motion on that claim. *See* Dkt. No. 66 at 29, 35 (finding Plaintiff's theories of corporate medical negligence and general negligence against State Defendants are indistinguishable and recommending Plaintiff's motion for partial summary judgment as to the claim be granted).

However, as previously stated, this issue is not properly before the Court. Plaintiff also repeats his argument that Dr. Barnett's conduct "was particularly egregious because she cancelled Romero's medical appointments which might have led to the realization that Romero needed to be seen by his outside provider every two months." *Id.* For the reasons stated in the Report and Recommendation (Dkt. No. 66 at 18–19), the undisputed facts regarding the circumstances surrounding the cancellation of the medical appointment do not meet the high standard for deliberate indifference with regard to Dr. Barnett.

The Court finds that the individual Defendants have shown that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law on Plaintiff's Eighth Amendment deliberate indifference claim.[2]

**B.    Medical Malpractice/Medical Negligence Claim**

Defendants argue that Plaintiff "asserts duplicative claims of negligence and medical malpractice against all defendants." Dkt. No. 42 at 11–12. The Court finds Plaintiff's Complaint and subsequent briefing in his motion for partial summary judgment ("Plaintiff's Motion") confusing but comes to the conclusion that these claims are not duplicative. While Plaintiff's Complaint asserts his second cause of action for the claim of negligence against all Defendants, Dkt. No. 1-2 at 9–10, Plaintiff's Motion suggests that this general negligence claim applies only to the State Defendants. *See* Dkt. No. 44 at 19, 23–24. Plaintiff's third cause of action is for medical malpractice. Dkt. No. 1-2 at 10–11. In Plaintiff's Motion, Plaintiff discusses both a negligence claim as well as medical malpractice claim, but both are premised on RCW Chapter 7.70 for actions for injuries resulting from health care. *See* Dkt. No. 44 at 17, 24. The Court will refer to the claim based upon RCW Chapter 7.70 as Plaintiff's medical negligence claim. As the

---

[2] Having found for the individual Defendants on the Section 1983 claim, the Court does not reach the qualified immunity issue raised in Defendant's motion for summary judgment.

medical negligence claim has different elements from Plaintiff's general negligence claims, the claims are not duplicative.

### 1.     Medical Negligence of the Individual Defendants

Plaintiff objects to the recommendation that the Court grant Defendants' summary judgment motion on his medical negligence claims against the individual Defendants. A negligence claim for injuries resulting from a health care provider requires: (1) the "fail[ure] to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances"; and (2) that such failure was the proximate cause of the injury complained of. RCW 7.70.040(1). The Report and Recommendation as well as Plaintiff's objection focus on the proximate cause element.

A principle of proximate cause in a medical negligence case under Washington law is that "if a reasonable person could infer, from the facts, circumstances, and medical testimony, that a causal connection exists, the evidence is sufficient to survive summary judgment." *Attwood v. Albertson's Food Ctrs., Inc.*, 966 P.2d 351, 353 (Wash. Ct. App. 1998). However:

> [E]vidence establishing proximate cause must rise above speculation, conjecture, or mere possibility. Thus, medical testimony must demonstrate that the alleged negligence "more likely than not" caused the later harmful condition leading to injury; that the defendant's actions "might have," "could have," or "possibly did" cause the subsequent condition is insufficient.

*Id.*; *see also Williams v. Franciscan Health Sys.*, No. 83415-1-I, 2022 WL 1076108, at *6 (Wash. Ct. App. Apr. 11, 2022) (citing *Attwood*, 966 P.2d at 353) (affirming dismissal of medical negligence claim for failure to show "more likely than not" causation).

In this case, the Report and Recommendation details the undisputed fact that three of the individual Defendants only interacted with Plaintiff *after* he reported the vision in his left eye

was gone on May 24, 2018.[3] Dkt. No. 66 at 26–28. Defendant Ms. Gumbo started as a per diem nurse just months before this report, and Defendants Ms. Horne and Dr. Awad did not begin their employment at DOC until after Mr. Romero reported having no vision in his left eye.[4] It is unclear from the record before the Court when Defendant Dr. Barnett started at the DOC, but the earliest the Court could ascertain was some time in 2017 (Dkt. No. 47-1 at 39) and there is no evidence of her having had anything to do with Plaintiff before July 2018, when she withdrew a consult request submitted by Ms. Gumbo. *Id.* at 126. In any event and as detailed in the Report and Recommendation, these four individual Defendants had limited interactions with Plaintiff overall. Dkt. No. 66 at 26–28.

To counter the undisputed evidence that fails to establish causation, Plaintiff asserts that "Defendants have not submitted any evidence from any expert approving of their conduct, nor have they submitted any evidence that their conduct did not contribute to Romero's vision loss." Dkt. No. 68 at 7. Plaintiff relies heavily on his medical expert, Dr. Todd Lefkowitz, to attempt to create a dispute of material fact. But Dr. Lefkowitz dooms Plaintiff's proximate cause argument.

First, Dr. Lefkowitz declares that, "[h]ad medical and surgical treatment of Mr. Romero's condition been properly pursued in accordance with medically accepted standards of care, the vision loss he presently suffers *could most likely have* been avoided." Dkt. No. 46 ¶ 27 (emphasis added). Dr. Lefkowitz's opinion that the loss *could* have been avoided (as opposed to *would* have been avoided) is speculative and without specificity or support. *Attwood*, 966 P.2d at 353.

---

[3] Dkt. No. 47-1 at 122.

[4] Ms. Gumbo began her employment with the DOC in January 2018 (Dkt. No. 65-2 at 5) and saw Plaintiff for the first time on June 28, 2018. Dkt. No. 47-1 at 124. As a per diem nurse, she was not a regular employee but was called as needed. Dkt. No. 65-2 at 6. Ms. Horne was hired in June 2018. Dkt. No. 65-4 at 7. Dr. Awad was hired in September 2018. Dkt. No. 65-5 at 5.

Second, while his declaration as a whole could support a finding of general negligence by the State Defendants, Dr. Lefkowitz fails to explain how any of the individual Defendants could have taken action—which would only have occurred *after* Plaintiff had already lost sight in his left eye—such that Plaintiff's vision would have returned. Indeed, the medical malpractice statute under which Plaintiff brings his claim requires the filing of a certificate of merit that "contain[s] a statement that the person executing the certificate of merit believes, based on the information known at the time of executing the certificate of merit, that there is a reasonable probability that the defendant's conduct did not follow the accepted standard of care required to be exercised by the defendant." RCW 7.70.150(3). A plaintiff must file a certificate of merit for *each* defendant. RCW 7.70.150(2). The problem here is that Dr. Lefkowitz lays out how, systemwide, Plaintiff's vision was lost sometime after 2016, but he then lumps all the individual defendants together. Dr. Lefkowitz simply seems to state, very broadly, that Plaintiff might have received better medical care at *some* point between 2016 to 2019 to avoid his loss of vision. Even Dr. Lefkowitz's final conclusion, that "[h]ad medical and surgical treatment of Mr. Romero's condition been properly pursued in a timely matter in accordance with medically accepted standards of care, the vision loss he presently suffers could most likely have been avoided" (Dkt. No. 46 at 7) is generic.

Dr. Lefkowitz's declaration fails to "rise above speculation, conjecture, or mere possibility" as to any of the individual defendants. *Attwood*, 966 P.2d at 353 (that the defendant's actions "might have," "could have," or "possibly did" cause the subsequent condition is insufficient to establish proximate cause). As Plaintiff cannot meets his burden to establish a genuine issue of material fact, his attempt to avoid summary judgment with regard to the medical negligence claim against the individual defendants also fails.

ORDER ADOPTING REPORT AND
RECOMMENDATION - 9

### 2. Medical Negligence of State Defendants

Finally, Plaintiff does not directly address the Report and Recommendation's discussion of Plaintiff's claim of medical negligence against the State Defendants. Dkt. No. 66 at 29–30. However, the Court will briefly address this for the sake of clarity on the issue.

"Health care provider" includes entities, such as the State Defendants, for purposes of RCW Chapter 7.70 claims. RCW 7.70.020(3). In moving for summary judgment on the medical negligence claims on behalf of the individual defendants, Defendants concede that the medical negligence claim against State Defendants should proceed, as "Defendant DOC would be vicariously liable for any prior providers, including the now-deceased Dr. Kenneth Lauren . . . [and] Plaintiff should be permitted to pursue this cause of action solely against Defendant DOC." Dkt. No. 42 at 13. However, Defendants argue in their response to Plaintiff's Motion that summary judgment against the State Defendants should be denied to the extent that Plaintiff is relying on the vicarious liability of DOC employees other than the named individual defendants. Dkt. No. 53 at 8. The Court agrees with Defendants on this issue with regard to Plaintiff's motion. Plaintiff points to no other evidence other than the evidence specific to the individual Defendants (which the Court finds insufficient to survive summary judgment with regards to the medical negligence claim against them) or Dr. Lefkowitz's declaration (which the Court finds to be insufficient for the purposes of summary judgment) to support his argument on this issue. Accordingly, the Court finds summary judgment on the claim against State Defendants is inappropriate.

### IV.   CONCLUSION

For the foregoing reasons, the Court hereby ORDERS:

(1)   The Report and Recommendation is APPROVED and ADOPTED.

(2)   Defendants' motion for summary judgment (Dkt. No. 42) is:

      (a)    GRANTED as to Plaintiff's Eighth Amendment claims against all individually named Defendants;

      (b)    GRANTED as to Plaintiff's medical negligence claims against the individually named Defendants; and

      (c)    DENIED as to the issue of contributory negligence.

(3)    Plaintiff's motion for partial summary judgment (Dkt. No. 44) is:

      (a)    DENIED as to Plaintiff's Eighth Amendment claims;

      (b)    DENIED as to Plaintiff's medical negligence claims against all Defendants;

      (c)    GRANTED with respect to the issue of liability as to Plaintiff's general negligence claim against the State of Washington and the DOC.

(4)    Plaintiff's intentional infliction of emotional distress claim (Fourth Cause of Action) is DISMISSED.

(5)    The Clerk is DIRECTED to send copies of this Order to all counsel and to the Honorable Michelle L. Peterson.

Dated this 1st day of November 2022.

Tana Lin
United States District Judge